# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | 8:12CR24 |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | and |
| | ) | FINDINGS AND |
| NATHAN YOUNG, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Motion to Strike ([Filing No. 24](#)), the Motion to Suppress Statement ([Filing No. 26](#)), and the Motion to Suppress Search ([Filing No. 28](#)) filed by defendant Nathan Young (Young). Young is charged in a two-count Indictment with the production and manufacture of child pornography (Count I) in violation of [18 U. S. C. § 2251(a)](#) and the receipt and distribution of child pornography (Count II) in violation of [18 U.S.C. § 2252(A)(a)(2)](#). **See** [Filing No. 1](#). Young seeks to strike language from both counts of the Indictment referring to a conviction under the Uniform Code of Military Justice for the possession of child pornography, to suppress evidence seized pursuant to state court search warrants issued on September 22 and 26, 2011, and to suppress Young's statement made while being interrogated at the Columbus Police Department on September 21, 2011.

The court held a hearing on the motions on May 2, 2012. Young was present with his counsel, Federal Public Defender David R. Stickman. The United States was represented by Assistant U.S. Attorney Michael P. Norris. The court heard the testimony of Investigators Jaymee Mueller (Investigator Mueller) and Chico Lozos (Investigator Lozos) of the Columbus, Nebraska, Police Department (CPD). The court also received in evidence the following exhibits: a CD of the audio/video interrogation of Young on September 21, 2011 (Exhibits 1, 1A, and 1B); an Affidavit and Complaint for a Search Warrant and Search Warrant dated September 22, 2011 (Exhibit 2); an Affidavit and Complaint for a Search Warrant dated September 26, 2011 (Exhibit 3); an Evidence Collection Log dated September 22, 2011; a Request for Video Recording (Exhibit 101);

and a List of Items Seized (Exhibit 102).  A transcript (TR.) of the hearing was prepared and filed on May 9, 2012 ([Filing No. 38](#)).

## FINDINGS OF FACT

Investigator Mueller has been a police officer with CPD for ten years where she is assigned to the criminal investigation division specializing in family crimes and child sexual assaults (TR. 10).  She also monitors the sex offender registry for Columbus (TR. 10).  On September 16, 2011, Investigator Mueller was contacted by Nebraska State Patrol (NSP) Trooper Jim Travinec (Trooper Travinec) who informed Investigator Mueller he was contacted by one of the night nurses (Ms. Briggs) at the Columbus hospital with her concerns about Ms. Briggs' middle school-age daughter having contact on Facebook with Nathan Young (TR. 11).  Ms. Briggs had learned Young was a convicted sex offender and was listed on the NSP sex offender website (TR. 11).  Investigator Mueller requested Trooper Travinec have Ms. Briggs call her at the CPD (TR. 11).

On September 20, 2011, Ms. Briggs called Investigator Mueller (TR. 12). Ms. Briggs informed Investigator Mueller that Ms. Briggs' daughter was in middle school and found out her daughter as well as the daughter of another night nurse were Facebook friends of Young (TR. 12).  After accessing the Facebook account, Ms. Briggs learned Young was Facebook friends with many other middle school-age girls (ages 12-14) and provided Investigator Mueller with names on Young's friends list (TR. 12-13).  Investigator Mueller spoke with the daughter of the other night nurse who stated she was a Facebook friend of Young and she and other girls had met Young at the local skate rink (TR. 14).  Thereafter, Investigator Mueller accessed Young's Facebook profile and located approximately thirty middle school-age girls' names Young had listed on his Facebook profile (TR. 15).  At this time Young was up to date on the registry as a registered sex offender subsequent to his prior conviction for possession of child pornography (TR. 15).

Investigator Mueller prepared a questionnaire to be taken to the Columbus Middle School (TR. 16).  On the afternoon of September 21, 2011, Investigator Mueller and Investigator Lozos together with Platte County Sheriff's Office Deputies Dane Jensen and Joseph Gragert went to the Columbus Middle School to hand out the questionnaires and

conduct interviews (TR. 16). Investigator Mueller met with school counselors and provided them with names of ten students the officers wished to interview (TR. 16-17). The students were sixth through eighth graders and aged from eleven to thirteen (TR. 18). The officers were separated into teams and the students were brought to the counseling office for interviews (TR. 17). The questionnaires were handed out in a group setting and completed by the students (TR. 17). Once the questionnaire was completed by the student, if it seemed like the student had more knowledge of Young, the student was separated from the others and interviewed (TR. 17). From the interviews, it was learned Young had become Facebook friends with them and mutual friends and had met several of them at the local skating rink (TR. 18). Young had communicated with them by Facebook, chat, cell phones, and Xbox LIVE (TR. 18). Young had about sixty-five known Facebook friends (TR. 20).

There was an early dismissal at the Columbus Middle School and rather than going back to the station at CPD, Investigators Mueller and Lozos drove together in an unmarked CPD car to Young's residence in a trailer park (TR. 20). Investigator Mueller was concerned some of the students they interviewed may contact Young and let him know the police were asking questions about him (TR. 22). The drive took about five minutes and upon arrival, Investigator Mueller knocked on the door (TR. 21). Young's mother came to the door and Investigator Mueller asked to speak with Young (TR. 21). Young came to the door dressed in jeans with no shirt or shoes, shut the door behind him, and spoke with Investigator Mueller on the porch (TR. 21). Investigator Mueller identified herself and asked Young if he would come down to the station and answer some questions (TR. 22). Investigator Mueller testified she wanted to talk with Young at the station because she believed the trailer home to be quite cluttered and untidy, which she recalled from a past visit, there were several dogs present, and Young's mother would be present (TR. 22). Young asked to get some shoes and a shirt, went back inside, and closed the door (TR. 23). Young reemerged dressed in jeans, a shirt, and shoes (TR. 23). Although there were two cars outside the residence, Young said they were inoperable (TR. 23). Young asked if Investigator Mueller drove him to the police station, could Young be given a ride back home (TR. 23). Investigator Mueller agreed to do so (TR. 23). The drive to the station was

3

about two miles and took about five minutes (TR. 25).  There was no conversation during the drive about the case but there was some conversation about the weather (TR. 25). Upon arrival at the station, Investigator Mueller parked at the rear of the station and entered through the back door using a key pad (TR. 26).  The back door of the station opens to a booking area and holding cells with an inner door to the main part of the police department, which was propped open and otherwise accessible by a key pad (TR. 26). Investigator Mueller and Young walked through the main police department to an interview room (TR. 26).   The interview room door was not locked and Young could have left the room and the main police department without assistance if he chose (TR. 27-28). The interview room was approximately five feet by eight feet and was equipped with a camera and sound recording (TR. 29; 67; Exhibit 1[1]).  A small table was in one corner with two chairs (Exhibit 1).

Once inside the interview room, Investigator Mueller pulled down the blinds in the room to a window to the public area of the main police station (TR. 67; Exhibit 1).  The interview began at approximately 2:45 p.m. (TR. 29).  Investigator Mueller told Young he was not in custody and she wanted to ask Young some questions concerning his friending of children (TR. 30).  Young told Investigator Mueller he had "friended" approximately a thousand people on Facebook but had narrowed that list down for further communication (TR. 31). Young stated he used Facebook and Xbox LIVE to communicate with kids in the age range of twelve to fourteen as he was comfortable communicating with them (TR. 32). Young stated he had made contact with some of the kids at the Columbus skating rink (TR. 32).  One of those Young befriended was a 14-year old girl (referred to as E14 during the hearing) whom Young talked about affectionately saying they shared stories and problems in their lives (TR. 32-33).  Investigator Mueller left the interview room and asked Investigator Lozos to contact E14 and her mother and ask them to come to the Columbus police station for an interview (TR. 33).

Investigator Mueller returned to the interview room with her laptop computer and accessed the Internet (TR. 34).  Investigator Mueller logged onto Facebook and, with Young's assistance, accessed Young's Facebook account (TR. 34).  Young's Facebook

---

[1] Exhibit 1 is playable with the use of additional software (Exhibits 1A and 1B).

4

account was quite active and Investigator Mueller wanted to access numerous messages in Young's Facebook account (TR. 34-35). However, Young was very selective in what he would allow Investigator Mueller to see in the account (TR. 35). Investigator Mueller continued to talk with Young about his contacts with numerous young teenagers (TR. 36-37).

While Investigator Mueller was talking with Young in the interview room, Investigator Lozos contacted E14 and her mother who came to the Columbus police station (TR. 38). Investigator Mueller left the interview room containing Young to talk with E14 and her mother in another interview room (TR. 39). E14 informed Investigator Mueller she had met with Young, she had a relationship that was more than a friendship with Young, and had conversed with him about sexual matters (TR. 40-41). E14 said she had attempted to break off the relationship with Young but he wanted to continue the relationship (TR. 41).

Investigator Mueller returned to the interview room with Young and questioned him about the relationship with E14 (TR. 41). Young stated he had discussed sexual relations with E14 and had met E14 at a local park in Columbus (TR. 41). Investigator Mueller told Young she wanted to delve more deeply into the relationship with E14 including any physical touching, so Investigator Mueller advised Young of his *Miranda* rights (TR. 41). Young invoked his rights and the interview was terminated (TR. 41-42). Following the interview, Young was arrested by Investigator Mueller "on the sexual assault of the child electronic enticement charge because he began a relationship on Facebook and continued the relationship meeting her in person and speaking of sex." (TR. 42).

After Young was booked into the Platte County Jail, Investigator Mueller prepared an application and affidavit for a warrant to search Young's residence at 3317 25th Street, Number 44, in Columbus, Platte County, Nebraska (TR. 46; Exhibit 2). The application and affidavit was presented to a Platte County judge who signed the search warrant (TR. 46-47). The affidavit set forth Investigator Mueller's interview with E14 and the sexual contact Young had with her (Exhibit 2). The search warrant authorized a search for a seizure of:

> Written documents in communications with [E14] or describing the relationship with [E14], Computers and any other electronic devices used in the transmission of communication and solicitation of [E14], any electronic storage devices that may be used to store communications, including chat logs, inbox

5

messages, posts, other communications. Nathan Young's cellular telephone and any smart cards or storage devices. XBox console device used in communication with minor discussing relationship with [E14].

Exhibit 2.

The search warrant was executed around 9:30 a.m. the next day, September 22, 2011, by a team consisting of Investigators Mueller and Lozos, Officers Hefti, Pensick, and Magdelano, and Deputies Gragert and Jensen (TR. 48-49). Young's mother, Candace Young (Mrs. Young), was the only person present in the residence at the time (TR. 49). Numerous items were seized (Exhibits 4 and 102). During the search, Mrs. Young told the officers her son, Wilber Young, had been at the residence earlier in the morning and had removed some items (TR. 51). Investigator Lozos and Deputy Jensen left and drove to Wilber Young's residence and retrieved a cell phone and a laptop computer (TR. 51-52; Exhibit 4). On September 26, 2011, Investigator Mueller applied for and received a search warrant from the Platte County Court to perform a forensic examination upon various of the electronic devices seized on September 22, 2011 (TR. 53-55; Exhibit 3).

Young was indicted by the grand jury for the District of Nebraska on January 19, 2012, as follows:

COUNT I

From on or about August 2011 to on or about September 20, 2011, in the District of Nebraska, NATHAN YOUNG, the defendant herein, having previously been convicted under the Uniform Code of Military Justice for the possession of child pornography, did, and attempted to, use, persuade, induce, entice, and coerce a person under the age of eighteen to engage in sexually explicit conduct, for the purpose of producing visual depictions of such conduct, such visual depictions having been produced using material that had been mailed, shipped and transported in interstate and foreign commerce, including but not limited to: an HP Laptop computer; a LG Verizon cellular phone; a Seagate hard drive; and a Samsung cellular phone.

In violation of Title 18, United States Code, Section 2251(a).

COUNT II

On and before September 22, 2011, in the District of Nebraska, NATHAN YOUNG, the defendant herein, having

> previously been convicted under the Uniform Code of Military Justice for the possession of child pornography, did knowingly receive visual depictions, and attempt to receive visual depictions, that is, digital and computer images in files that had been mailed, shipped and transported in interstate and foreign commerce by any means, including by computer, the production of such visual depictions having involved the use of a minor engaging in sexually explicit conduct and were depictions of such conduct.
>
> In violation of Title 18, United States Code, Section 2252A(a)(2).

Filing No. 1.


## LEGAL ANALYSIS

### A. Motion to Strike Surplusage - Filing No. 24

Young seeks to have the court strike the following language from both counts of the Indictment: "having previously been convicted under the Uniform Code of Military Justice for the possession of child pornography." Young asserts such language is not an element of the offense nor does it qualify as an enhancement in the event of conviction. Young acknowledges he was convicted in 2010 of violating Article 134 of the Uniform Code of Military Justice (UCMJ) for the possession of child pornography. However, Young asserts the sentencing enhancement provisions of 18 U.S.C. §§ 2251(e) and 2252A(b)(1) relate to a conviction of the possession of child pornography under Article 120 of the UCMJ and not Article 134. Citing ***United States v. Brown***, 529 F.3d 1260 (10th Cir. 2008), Young asserts the charged language should be stricken from the Indictment.

The government asserts the charged language was inserted in the Indictment to place Young on notice of an enhanced penalty in the event of conviction. Previously, this court has held the charging of sentencing enhancement language in the Indictment for an offense under 18 U.S.C. § 2252(b)(2) was surplusage. **See *United States v. Stults*, No. 8:07CR199, 2007 WL 3275129 (D. Neb. Nov. 2, 2007)**. The government acknowledges the holding in ***Stults***. However, the government also argues the issue is premature and not ripe for review. Even so, the government suggests the motion to strike should be granted at this juncture of the proceedings (TR. 6). The court will grant the motion and strike the language in issue.

## B. Motion to Suppress Statement - Filing No. 26

Young seeks to suppress any statements given to Investigator Mueller at the Columbus Police Station on September 21, 2011. He asserts he was in custody during the interrogation and he was not advised of his *Miranda* rights until the end of the interrogation. When he was advised of such rights, he invoked his rights and further interrogation ceased. Young, in his motion, asserts there was some interrogation about the case during the drive from his residence to the police station in Investigator Mueller's vehicle but the testimony from the hearing was contrary (TR. 25; 63). The testimony from the hearing indicates Young voluntarily accompanied Investigators Mueller and Lozos to the police station in Investigator Mueller's unmarked police vehicle when Investigator Mueller offered to drive Young to the station and return him after the interview (TR. 60-61). Mueller stated the offer was made when Young advised the officers that the vehicles outside the Young residence were inoperable (TR. 23; 61). Young was not handcuffed nor restrained during the ride to the police station. Upon arrival at the police station, Investigators Mueller and Lozos and Young parked in the rear, and walked to the back door, which Investigator Mueller accessed by a key pad. Further, the trio walked through the back of the police station through an open inner door to the interview room where Young had a seat at a table. Investigator Mueller told Young he was not in custody and wanted to ask him a few questions about his relationships with the children he had friended on Facebook. Asked if wanted a glass of water, Young said "sure" and was given a glass of water.

Young asserts he was in custody during the interview and not provided his rights under *Miranda v. Arizona*, 384 U.S. 436, 467 (1966).

"The requirements of *Miranda* arise only when a defendant is both in custody and being interrogated." *United States v. Londondio*, 420 F.3d 777, 783 (8th Cir. 2005).

> Not every confession obtained absent the *Miranda* warnings is inadmissible, however, because "police officers are not required to administer *Miranda* warnings to everyone whom they question. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was that sort of coercive

> environment to which ***Miranda*** by its terms was made applicable, and to which it is limited."

*[United States v. LeBrun](#)*, 363 F.3d 715, 720 (8th Cir. 2004) (**quoting** *[Oregon v. Mathiason](#)*, 429 U.S. 492, 495 (1977)). The "ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *[California v. Beheler](#)*, 463 U.S. 1121, 1125 (1983) (per curiam) (internal marks omitted). The court must evaluate the objective circumstances surrounding the interrogation, and whether, under those circumstances, "a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *[Thompson v. Keohane](#)*, 516 U.S. 99, 112 (1995); *[Stansbury v. California](#)*, 511 U.S. 318, 322-23 (1994) (based "on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned").

The court has considered the relevant factors to be considered in determining whether or not a suspect is in custody for the purposes of ***Miranda*** warnings as set forth by the Eighth Circuit in *[United States v. Griffin](#)*, 922 F.2d 1343, 1348-52 (8th Cir. 1990). Given the testimony of Investigator Mueller and a review of the audio/video (Exhibit 1) of the interview conducted by Investigator Mueller at the Columbus Police station on September 21, 2011, the court finds Young was not in custody and no ***Miranda*** warnings were required until Investigator Mueller placed Young in handcuffs.

Further, the court finds Young's statements to Investigator Mueller on September 21, 2011, to have been given voluntarily. The court looks to the totality of circumstances in determining whether or not the statements were voluntary. *[Colorado v. Connelly](#)*, 479 U.S. 157 (1986); *[Mincey v. Arizona](#)*, 437 U.S. 385 (1978); *[Schneckloth v. Bustamonte](#)*, 412 U.S. 218 (1973). In determining whether Young made statements voluntarily, the court must determine if Young was coerced or his will was overborne. *[United States v. Wilson](#)*, 787 F.2d 375, 380-81 (8th Cir. 1986). In doing so, the court must consider the totality of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. *[Schneckloth](#)*, 412 U.S. at 225-26. Coercive police pressure is a predicate to the finding that the confession is not voluntary and violates the accused's due process rights. *[Connelly](#)*, 479 U.S. at 167. However, any police questioning has coercive aspects to it simply by reason of the confrontation. The

police officer is part of the law enforcement system that will cause a charge to be made against a suspect. The questioning by a police officer, while uncomfortable, is not coercive *per se*. See *Mathiason*, 429 U.S. at 495. The court finds there was no coercive activity by Investigator Mueller in eliciting statements by Young during the interview at the police station on September 21, 2011.

Young's motion to suppress his statements made on September 21, 2011, to Investigator Mueller during the interview at the Columbus Police station should be denied.

### C. Motion to Suppress Search - Filing No. 28

Young asserts the seizure of certain evidence on September 21, 2011, was the fruit of the poisonous tree, i.e., an illegal interview with Young at the Columbus Police station which led to the seizure of items in the search warrant issued by the Platte County Court judge. At the outset, the court has found the statements Young gave to Investigator Mueller were not illegally obtained as set forth in Section B above. Accordingly, the exclusionary principles of *Wong Sun v. United States*, 371 U.S. 471 (1963), do not apply.

Young asserts the following items, which were not specifically listed in the search warrant, should be suppressed and excluded from evidence:

> Play Station 3 Console, "extenze liquid male enhancement", 8 x 12 printed photos, Compact Disc (1) Compact Discs (13), VHS Tapes (21), Framed Photo of Woman, Compact Discs (4), Polaroid One Time Use Camera, Memorex DVD-R (2), Documents, Cybershot Digital Camera, Compact Discs (23), CDR/ DVD-R Discs (99), Play Station II Console, JVC Mini Digital Cassettes (2), Sony HandyCam Camcorder, Cobra DVC 900 Video Camera and Compact Discs (31).

Filing No. 28 - Motion to Suppress Search ¶ 3.

Apart from the liquid male enhancement and the photos, the items seized clearly fall within the confines of the warrant authorizing the seizure of electronic devices involving transmission of communications and devices for storage of communications. In ***United States v. Peters***, the Eighth Circuit stated: "As we have previously held, the requirement that a search warrant describe its objects with particularity is a standard of 'practical accuracy' rather than a hypertechnical one." *United States v. Peters*, 92 F.3d 768, 769-70 (8th Cir. 1996) (**quoting** *United States v. Lowe*, 50 F.3d 604, 607 (8th Cir. 1995)).

The liquid male enhancement and photos were seized as evidence in plain view when the other items were seized. Given the nature of the investigation, these items were incriminating and immediately apparent to the searching officers. See *United States v. Garner*, 907 F.2d 60 (8th Cir. 1991); *United States v. Robinson*, 756 F.2d 56 (8th Cir. 1985). Young's motion to suppress the search (Filing No. 28) is without merit and should be denied. In conclusion,

**IT IS ORDERED** that Young's Motion to Strike (Filing No. 24) is granted. The phrase "having previously been convicted under the Uniform Code of Military Justice for the possession of child pornography" is stricken from Counts I and II of the Indictment.

**IT IS RECOMMENDED TO CHIEF JUDGE LAURIE SMITH CAMP that:**

Young's Motion to Suppress Search (Filing No. 26) and Motion to Suppress Statement (Filing No. 28) be denied.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Order and Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order and Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 15th day of June, 2012.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.